**No. 7:21-cv-05782 (VB)**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
———————————

TRANSFORM HOLDCO LLC

*Appellant,*

— v. —

SEARS HOLDINGS CORPORATION, ET AL.,

—————

*Appellees.*

ON APPEAL FROM THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK (DRAIN, J.)

IN RE SEARS HOLDINGS CORPORATION, ET AL, CASE NO. 18-23538

## REPLY BRIEF FOR APPELLANT

CLEARY GOTTLIEB STEEN &
HAMILTON LLP
Sean A. O'Neal
Andrew Weaver
Samuel Levander
One Liberty Plaza
New York, New York 10006
Tel. (212) 225-2000
Fax (212) 225-3999
soneal@cgsh.com

*Attorneys for Appellant Transform Holdco LLC*

**TABLE OF CONTENTS**

**Page**

Table of Authorities ............................................................................................ ii

PRELIMINARY STATEMENT ........................................................................... 1

ARGUMENT ......................................................................................................... 2

I.    TRANSFORM ACQUIRED THE FOREIGN SUBSIDIARY
      CASH UNDER THE UNAMBIGUOUS PLAIN LANGUAGE OF
      SECTION 2.13(A) OF THE APA ................................................................. 2

      A.   "In Lieu of" ....................................................................................... 3

      B.   "Deemed to Be" ................................................................................. 5

II.   THE BANKRUPTCY COURT ERRED IN CONSIDERING
      PAROL EVIDENCE ................................................................................... 7

      A.   The Debtors Are Wrong that the Parties' Contract Negotiations
           and Conduct of the Parties at the Sale Hearing Are Not Parol
           Evidence ............................................................................................. 8

      B.   Transform Did Not Waive its Argument that the Bankruptcy
           Court Erred by Considering Parol Evidence in Interpreting the
           Plain Language of the APA. .............................................................. 10

III.  THE BANKRUPTCY COURT ERRED IN NOT FINDING THAT
      THE PAROL EVIDENCE FAVORS TRANSFORM ................................. 13

IV.   THE BANKRUPTCY COURT IMPROPERLY RELIED ON
      EVIDENCE OUTSIDE THE RECORD TO DENY
      TRANSFORM'S ACQUIESCENCE CLAIM .............................................. 17

Conclusion ........................................................................................................... 20

Certificate of Compliance ..................................................................................... 22

# TABLE OF AUTHORITIES

**Rules and Statutes**      **Page(s)**

Federal Rule of Bankruptcy Procedure 8015(a)(5)................................................................ 22

Federal Rule of Bankruptcy Procedure 8015(a)(6)................................................................ 22

Federal Rule of Bankruptcy Procedure 8015(a)(7)(B)(i)...................................................... 22

Federal Rule of Bankruptcy Procedure 8015(g) ................................................................... 22

Local Rule 9014-2.................................................................................................... 17, 18, 19

**Cases**

*Allianz Ins. Co. v. Lerner,*
416 F.3d 109 (2d Cir. 2005)................................................................................................ 12

*Alta Berkeley VI C.V. v. Omneon, Inc.,*
41 A.3d 381 (Del. 2012) ................................................................................................ 2, 11

*Bayway Refining Co. v. Oxygenated Marketing & Trading A.G.,*
215 F.3d 219 (2d Cir. 2000)........................................................................................... 16, 17

*Carey v. Shellburne, Inc.,*
224 A.2d 400 (Del. 1966) ................................................................................................. 11

*Carrow v. Arnold,*
Civil Action No. 182-K, 2006 WL 3289582 (Del. Ch. 2006) ........................................... 10

*Cleveland Trust Co. v. Wilmington Trust Co.,*
258 A.2d 58 (Del. 1969) ................................................................................................... 10

*Georgitsi Realty, LLC v. Penn-Star Ins. Co.,*
702 F.3d 152 (2d Cir. 2012)................................................................................................ 6

*In re AMR Corp.,*
490 B.R. 470 (S.D.N.Y. 2013)...................................................................................... 18, 19

*In re Lucas,*
477 B.R. 236 (M.D. Ala. Bankr. 2012)................................................................................ 7

*Julian v. Julian*,
C.A. No. 1892-VCP, 2010 WL 1068192 (Del. Ch. Mar. 22, 2010) ................................... 13

*Lee v. BSB Greenwich Mortg. Ltd.*,
267 F.3d 172 (2d Cir. 2001) ................................................................................. 3, 11

*Lorillard Tobacco Co. v. American Legacy Foundation*,
903 A.2d 728 (Del. 2006) ......................................................................................... 9

*Matter of Penn-Dixie Indus., Inc.*,
22 B.R. 794 (S.D.N.Y. Bankr. 1982) ......................................................................... 11

*Mesa Partners v. Phillips Petroleum Co.*,
488 A.2d 107 (Del. Ch. 1984) .................................................................................... 9

*Osborn ex rel. Osborn v. Kemp*,
991 A.2d 1153 (Del. 2010) ........................................................................................ 8

*Pellaton v. Bank of New York*,
592 A.2d 473 (Del. 1991) ........................................................................................ 10

*Sunline Com. Carriers, Inc. v. CITGO Petroleum Corp*,
206 A.3d 836 (Del. 2019) ...................................................................................... 8, 9

*Wohl v. Owen*,
580 N.Y.S.2d 854 (N.Y. Sup. Ct. Kings Cty. 1992) .............................................. 6, 7

## Other Authorities

Byron F. Egan, *III. Whether To Do An Asset Purchase*, TXCLE Choice, Governance, &
Acquisition of Entities 7.III (State Bar of Texas 2018), 2018 WL 3407862 (2018).......... 3

*Lieu*, *Merriam-Webster Dictionary*, https://merriam-webster.com/dictionary/lieu (last
visited Aug. 13, 2021)........................................................................................... 4

# PRELIMINARY STATEMENT

At its core, this appeal is about the plain contractual language of Section 2.13(a) of the APA, and what it means for Transform to have acquired "all of the equity interests" in certain of Sears' Foreign Subsidiaries.[1]  This Court should reverse the decision of the Bankruptcy Court because there is no contractual basis to carve out the cash in the bank accounts of these Foreign Subsidiaries at the time of Closing from "all of the equity interests" that Transform purchased.

Rather than engage with this plain contractual language head-on, the Debtors attempt to divert the Court's attention to the history of their other disputes with Transform, the Parties' negotiations for the APA, and the conduct of the Parties at the Sale Hearing, among other irrelevancies.  But these are all obvious examples of parol evidence that a court may not consider in interpreting plain contractual language.  The Bankruptcy Court's reliance on this same parol evidence under these circumstances violated the basic principles of contract interpretation under binding precedent, and this Court should reverse on that basis alone.

Even if the Court were permitted to look at parol evidence, the most persuasive form of parol evidence – the parties' course of performance – favors Transform.  Before manufacturing the fragile legal arguments that form the basis of

---

[1]     All capitalized terms used but not defined herein shall have the meanings ascribed to them in Appellant's Brief, ECF No. 10 ("Appellant's Br.").

the Debtors' claim (which followed two entirely different theories of relief), the Debtors more than two years ago transferred to Transform "all of the equity interests" in the Hong Kong Subsidiaries, including the cash in their bank accounts, without attempting to carve out any assets.

By the same token, the Debtors acquiesced to this plain language interpretation of the APA, and cannot now challenge the interpretation that the Parties have relied on for the last two-and-a-half years.  Rather, the Debtors only recently adopted their position in this case – two years after their Plan was confirmed by the Bankruptcy Court – in the face of a more than $80 million gap between their available cash and the remaining amounts owed to administrative creditors that prevents the Debtors from effectuating their bankruptcy Plan.

## ARGUMENT

I.  **TRANSFORM ACQUIRED THE FOREIGN SUBSIDIARY CASH UNDER THE UNAMBIGUOUS PLAIN LANGUAGE OF SECTION 2.13(A) OF THE APA**

The plain language of Section 2.13(a) provides that Transform purchased "all of the equity interests" in the Foreign Subsidiaries, with no exclusion for the cash in the Foreign Subsidiaries' bank accounts at the time of Closing.  The Bankruptcy Court erred by holding otherwise.[2]

---

[2]     Both parties agree that the interpretation of contract language is a question of law that the District Court reviews *de novo* on appeal.  *See* Brief for Appellees, ECF No. 17 ("Appellees' Br.") at 7 (quoting *Rohn Indus., Inc. v. Platinum Equity LLC*, 911 A.2d 379, 382 n.3 (Del. 2006) ("Under Delaware law, the interpretation of contract language is treated as a question of law.")); *Alta*

None of the Debtors' arguments support affirmance for the reasons described below.

## A.     "In Lieu of"

The Debtors argue that Section 2.13(a) does not allow Transform to acquire more or different assets under one type of transaction than it would under the other. Appellees' Br. at 22.  But that is precisely what the contract says.  Transform had the ability, in its "sole discretion," to elect to acquire either (i) some assets and some liabilities, or (ii) "all of the equity interests in lieu of" the first option.  Under the latter option, which Transform selected, Transform both acquired all of the Foreign Subsidiaries' assets (including cash in their bank accounts at the time of Closing) and took on all of their liabilities.  Contrary to Debtors' suggestion, by its terms, an equity transaction did not provide Transform with a windfall.  As the authority cited by Debtors themselves makes clear, "[a]s a general rule, often it will be in the buyer's best interests to purchase assets but in the seller's best interests to sell stock or merge."  Byron F. Egan, *III. Whether To Do An Asset Purchase*, TXCLE Choice, Governance, & Acquisition of Entities 7.III (State Bar of Texas 2018), 2018 WL 3407862, at *1 (2018) (cited in Appellees' Br. at 23).

---

*Berkeley VI C.V. v. Omneon, Inc.*, 41 A.3d 381, 385 (Del. 2012) ("A judicial interpretation of a contract presents a question of law that this Court reviews *de novo*."); *Lee v. BSB Greenwich Mortg. Ltd.*, 267 F.3d 172, 178 (2d Cir. 2001) (quoting *Red Ball Interior Demolition Corp. v. Palmadessa*, 173 F.3d 481, 484 (2d Cir. 1999)) ("[A] lower court's threshold determination as to whether a contract is ambiguous . . . is subject to *de novo* review.").

Without support, the Debtors argue that "in lieu of" refers to the type of transaction to be consummated, not the kind or quantity of assets to be acquired. Appellees' Br. at 21-23. Yet no such limitation appears in the contract. Understandably not wanting to argue about the dictionary definition of "in lieu of," the Debtors instead seek to tie the interpretation of "in lieu of" to the so-called Third Clause of Section 2.13(a): "which equity interests shall be deemed to be Acquired Foreign Assets." The Debtors suggest no grammatical or logical reason why or how this Third Clause would impose a specific and non-standard meaning on the common phrase "in lieu of." Rather, "in lieu of" simply means "in the place of" or "instead of," *Lieu*, *Merriam-Webster Dictionary*, https://merriam-webster.com/dictionary/lieu (last visited Aug. 13, 2021), and the Debtors offer no alternative dictionary or common usage definition that supports their strained interpretation. Tellingly, the Debtors do not even try to defend the Bankruptcy Court's incorrect holding – made without citing any authority, and in contravention of several recent Second Circuit decisions – that "in lieu of . . . contemplates a change in form and not in value." *See* Appellants' Br. at 29-30 (quoting Transcript Regarding Hearing Held on 4/27/2021, Appendix for Appellant, Volume XVI, ECF No. 10-16 at A-7029 (61:25-62:1)).

### B.   "Deemed to Be"

The Debtors' interpretation rests upon the use of "deemed to be" in the Third Clause, arguing that Transform's interpretation of Section 2.13(a) would read the Third Clause out of the contract.  By "deem[ing]" the acquired equity interests to be the defined term "Acquired Foreign Assets," the Third Clause makes clear that such equity interests were included within the definition of that term; it does not remotely suggest, let alone make clear, that the purchased equity interests are in fact something less than the actual equity interests.  When the APA elsewhere includes references to "Acquired Foreign Assets," it is understood that this defined term would apply regardless of whether Transform subsequently elected to acquire certain assets and liabilities or all of the equity interests of the Foreign Subsidiaries.

The Debtors point to the Bankruptcy Court's statement that "the phrase [A]cquired [F]oreign [A]ssets really had no meaning in the original agreement," Appellees' Br. at 25 (quoting Transcript Regarding Hearing Held on 4/27/2021, Appendix for Appellant, Volume XVI, ECF No. 10-16 at A-7029 (61:2-5)), but they concede that the parties, in fact, used that defined term outside of Section 2.13(a) of the APA.  Indeed, that defined term appears 11 separate times in the APA.  Including "all of the equity interests" within the defined term "Acquired Foreign Assets" gives meaning and effect to the Third Clause.

5

The Debtors' tortured interpretation of the Third Clause is that the language "which equity interests shall be deemed to be Acquired Foreign Assets" does not mean what it says—that the equity interests are Acquired Foreign Assets under the APA—but instead serves to carve out assets from the equity interests Transform acquired. That is not remotely what the Third Clause says. Had the Parties meant "to circumscribe the property to be acquired by limitations included in the APA's definition of Acquired Foreign Assets," Appellees' Br. at 27, they could have done so by replacing either "all of the equity interests" or the Third Clause with a phrase that plainly captured that limitation. *See, e.g.*, *Georgitsi Realty, LLC v. Penn-Star Ins. Co.*, 702 F.3d 152, 155 (2d Cir. 2012) ("[T]he court may not write into a contract conditions the parties did not insert by adding or excising terms under the guise of construction, nor may it construe the language in such a way as would distort the contract's apparent meaning.").

The Debtors' out-of-circuit cases that purportedly support their interpretation of "deemed to be" are all readily distinguishable. These cases all found that the use of the word "deemed" to create a legal fiction does not transform the nature of the underlying thing. For example, in *Wohl v. Owen*, 580 N.Y.S.2d 854 (N.Y. Sup. Ct. Kings Cty. 1992), the parties deemed a 414.22 square foot property to be 660 square feet, creating a legal fiction such that, within the terms of the contract, the court held that the tenant was obligated to pay wage escalations as if the property were 660

square feet. *Id*. at 857. The legal fiction did not mean that the tenant could demand that the landlord give the tenant more than 414.22 square feet of space, which is essentially what Debtors are demanding here by saying that Transform acquired less than all of the equity interests. *See also In re Lucas*, 477 B.R. 236, 244 (M.D. Ala. Bankr. 2012) ("[J]ust because the parties deem a trust into existence does not necessarily mean they created a trust."). These cases do not stand for the proposition that using the word "deemed" in the APA somehow negated, diminished or changed Transform's acquisition of "all of the equity interests" of the Foreign Subsidiaries.

Finally, the Debtors argue that if Transform's interpretation were correct, the Parties should have added a clause to Section 2.1 to clarify that if Transform elected an equity acquisition, it would acquire all of the target entities' assets. But that argument is circular – Transform did not have to add such a clause to Section 2.1 because 2.13(a) already makes that point clear. That the Parties clarified the apportionment of liabilities (for both an asset purchase and equity transaction) by amending Section 2.4 does not have any implication by omission as to the apportionment of assets. Contract law does not demand the belt-and-suspenders approach proffered by the Debtors.

## II.  THE BANKRUPTCY COURT ERRED IN CONSIDERING PAROL EVIDENCE

Transform and the Debtors agree that this matter should have been decided on the face of the contract because Section 2.13(a) of the APA is unambiguous. *See*

Appellees' Br. at 21.  The Bankruptcy Court did not explicitly state whether it found Section 2.13(a) to be ambiguous, but nevertheless *sua sponte* consulted several categories of parol evidence to interpret this provision, without even admitting evidence.  Given that Section 2.13(a) of the APA is unambiguous, the Bankruptcy Court erred by interpreting it using parol evidence.  *See, e.g.*, *Sunline Com. Carriers, Inc. v. CITGO Petroleum Corp,*, 206 A.3d 836, 846 (Del. 2019) ("When the contract is clear and unambiguous, we will give effect to the plain-meaning of the contract's terms and provisions, without resort to extrinsic evidence.").  But, even if Section 2.13(a) of the APA were ambiguous (which it is not), the parol evidence here further demonstrates that the Foreign Subsidiary Cash belongs to Transform.

### A.    The Debtors Are Wrong that the Parties' Contract Negotiations and Conduct of the Parties at the Sale Hearing Are Not Parol Evidence

The Bankruptcy Court erred by relying on several categories of parol evidence, including the Parties' contract negotiations and the conduct of the Parties at the Sale Hearing.  The Debtors' arguments that these are not categories of parol evidence, and that the Bankruptcy Court properly "considered the unambiguous terms of the APA ***in their context***—i.e. in light of all of the circumstances surrounding the formation of the APA," Appellees' Br. at 31 (emphasis in original), are contrary to clear precedent.  While a court may interpret the terms of the APA based on any "context" provided by the terms of the entire contract, *see Osborn ex*

*rel. Osborn v. Kemp*, 991 A.2d 1153, 1159 (Del. 2010) (Delaware courts "read a contract as a whole"), binding law bars consulting extrinsic evidence to interpret unambiguous contractual language. *See, e.g.*, *Sunline*, 206 A.3d at 846.

The cases cited by the Debtors accord with these well-accepted principles. For example, in *Lorillard Tobacco Co. v. American Legacy Foundation*, the court used the "context" of the contract as a whole to decide which dictionary definitions of "personal," "attack," and "vilification" should apply to a specific contractual provision.  903 A.2d 728, 740-42 (Del. 2006).  Similarly, in *Mesa Partners v. Phillips Petroleum Co.*, the court held that "the attendant facts which constitute the setting for the contract" are only admissible as parol evidence if a contract is ambiguous.  488 A.2d 107, 113 (Del. Ch. 1984).  Neither of these cases supports the Debtors' assertion that courts may consult "context" that goes beyond the four corners of the contract to interpret unambiguous contractual language.  Such an exception for "context" would swallow the rule.

The Debtors do not and cannot contend that any of the categories of parol evidence relied on by the Bankruptcy Court – the conduct of the parties during the Sale Hearing, the effect on the Debtors' estates, and whether notice was provided to the UCC – fall within the four corners of the APA.  The Debtors cite no case holding that oral testimony or other extra-contractual conduct or writings are admissible under the parol evidence rule to interpret unambiguous contract language.  To the

contrary, each of the cases cited by the Debtors for the proposition that "[n]one of these categories of evidence constitutes inadmissible parol evidence" holds the opposite. *See Pellaton v. Bank of New York*, 592 A.2d 473, 478 (Del. 1991) (holding that the court will only "consider testimony pertaining to antecedent agreements [and] communications" where a contract is ambiguous); *Cleveland Trust Co. v. Wilmington Trust Co.*, 258 A.2d 58, 65 (Del. 1969) (holding that "evidence of the course of prior dealings between the parties" is inadmissible to interpret clear and unambiguous contract language); *Carrow v. Arnold*, Civil Action No. 182-K, 2006 WL 3289582, at *4 (Del. Ch. 2006) ("The parol evidence rule prevents the consideration of oral evidence that would *contradict*" the written terms of the agreement.) (emphasis in original).

### B. Transform Did Not Waive its Argument that the Bankruptcy Court Erred by Considering Parol Evidence in Interpreting the Plain Language of the APA.

Transform did not waive its argument that the Bankruptcy Court erred by considering parol evidence in interpreting the plain language of the APA. The Debtors' argument to the contrary fails as a matter of law and also relies on a distortion of the record.

*First*, as the Delaware Supreme Court has made clear:

The parol evidence rule is a rule of substantive law and not a rule of evidence. It follows that evidence which is inadmissible under the parol evidence rule does not acquire probative force merely because no objection was made

thereto; and any evidence violative of the rule, even though admitted without objection, should not be considered.

*Carey v. Shellburne, Inc.*, 224 A.2d 400 (Del. 1966); *see also Matter of Penn-Dixie Indus., Inc.*, 22 B.R. 794, 797 (S.D.N.Y. Bankr. 1982) ("Even if there is no objection to parol evidence by the litigants, the court should nevertheless exclude parol evidence from its consideration since this rule is not a rule of evidence, but rather a rule of substantive law.").

Transform cannot waive binding Second Circuit and Delaware Supreme Court authority governing how a court must interpret a contract. *See Alta Berkeley VI C.V. v. Omneon, Inc.*, 41 A.3d 381, 385 (Del. 2012) ("Unless there is ambiguity, Delaware courts interpret contract terms according to their plain, ordinary meaning."); *Lee v. BSB Greenwich Mortg. Ltd. P'ship*, 267 F.3d 172, 178 (2d Cir. 2001) ("If a contract is clear, courts must take care not to alter or go beyond the express terms of the agreement, or to impose obligations on the parties that are not mandated by the unambiguous terms of the agreement itself.") (quoting *Huertas v. E. River Hous. Corp.*, 992 F.2d 1263, 1266 (2d Cir.1993)).

*Second*, the Debtors are wrong when they assert that Transform did not raise this argument before the Bankruptcy Court. Transform made clear in its briefing that the APA was plain and unambiguous, *see* Transform Holdco LLC's Brief in Opposition to the Debtors' Third Motion to Enforce the Asset Purchase Agreement, Appendix for Appellant, Volume X, ECF No. 10-10 at A-4596 (describing the APA

as having "plain and unambiguous contractual language"), and that the Bankruptcy Court was therefore required by binding Delaware law to interpret the contract according to its plain, ordinary meaning. *Id.* at A-4607 ("Under Delaware law, courts interpreting contracts will 'give effect to the plain-meaning of the contract's terms and provisions.'") (quoting *Osborn ex rel. Osborn v. Kemp*, 991 A.2d 1153, 1159-60 (Del. 2010)).  Transform cited parol evidence before the Bankruptcy Court – as it does on appeal – as an alternative argument if the Court rejected Transform's primary argument that the contract was unambiguous. *See id.* at A-4611 ("[T]he Court need not look beyond the plain language of the APA . . . .  However, by waiting nearly two years to raise this matter for the first time, and after taking contrary positions to Transform's detriment . . . the Debtors are additionally barred from the relief sought in their Motion . . . .").

Transform did not address certain categories of parol evidence relied upon by the Bankruptcy Court in earlier briefing because the Bankruptcy Court raised issues for the first time *sua sponte* at oral argument.  The fact that the Bankruptcy Court interjected additional categories of parol evidence during the hearing after the parties briefed the dispute distinguishes this case from the ones cited by the Debtors. *See, e.g., Allianz Ins. Co. v. Lerner*, 416 F.3d 109, 114 (2d Cir. 2005) ("Defendants proffer no reason for their failure to raise the arguments below.").

## III.   THE BANKRUPTCY COURT ERRED IN NOT FINDING THAT THE PAROL EVIDENCE FAVORS TRANSFORM

Even if this Court holds that Section 2.13(a) of the APA is ambiguous (which it is not), the Bankruptcy Court erred – to the extent it found the language ambiguous – in finding that the parol evidence favored the Debtors.

*First*, the most persuasive parol evidence – the parties' course of performance – makes clear that the Debtors understood that "all of the equity interests" included no carve-out for the Foreign Subsidiary Cash.  Of course, Transform and the Debtors agree that the text of the contract is paramount (and more persuasive than course of performance evidence).  *See* Appellees' Br. at 46 ("[C]ourse-of-performance evidence ranks ***below*** the text of the contract in an interpretive dispute.") (emphasis in original).  But the Debtors do not and cannot contest that course of performance is the most persuasive category of parol evidence.  *See Julian v. Julian*, C.A. No. 1892-VCP, 2010 WL 1068192, at *5 (Del. Ch. Mar. 22, 2010) ("When faced with contractual ambiguity, . . . courts should consider the parties' course of performance as 'the most persuasive evidence of the [meaning of the] parties' agreement.'").

The Debtors' course of performance with respect to the Hong Kong Subsidiaries makes clear that they understood "all of the equity interests" included no carve-out for the Foreign Subsidiary Cash.  The Debtors point to language in the Hong Kong SPA that provides that Transform "agreed to purchase the [Hong Kong Shares] subject to and on the terms and conditions of the Master APA."  Appellees'

13

Br. at 45 (quoting Share Purchase Agreement, Appendix for Appellant, Volume X, ECF No. 10-10 at A-4623).  This language proves Transform's point.  If the Debtors' interpretation of Section 2.13(a) were correct (and if the Debtors had invented this position by April 2019), they should have carved out the cash in the Hong Kong Subsidiaries' bank accounts in the Hong Kong SPA.  To the contrary, when the Debtors effected the transfer, they delivered "all of the equity interests" in the Hong Kong Subsidiaries – consistent with their plain language obligations under the APA – without trying to carve out any assets, specifically including cash in their bank accounts.

*Second*, the Debtors cannot brush aside the course of performance evidence on the basis that they "believed . . . there was no, or effectively no, cash to carve out of the Hong Kong subsidiaries."  Appellees' Br. at 46.  The Debtors disclaim any knowledge of the Foreign Subsidiaries' cash position and blame what they characterize as "Transform's soon-to-be Finance Department" for their own purported misunderstanding.  *Id*.  But no sleight of hand can disguise that, as of the Closing Date, these were the Debtors' own subsidiaries and the supposedly incomplete information was provided by the Debtors' own Finance Department.  To the extent that the Debtors underestimated the amount of cash in their own subsidiaries – and the only support for this proposition is the untested Acevedo Declaration – the Debtors cannot now blame their inaction on a lack of available

information.  And even by the Debtors' own account, they understood in January 2019 they could recover $1 to $1.5 million from the Foreign Subsidiary Bank Accounts.  Acevedo Decl., Appendix for Appellant, Volume X, ECF No. 10-10 at A-4681-82, ¶ 11.[3]

*Third*, the Debtors do not address – nor attempt to dispute – that the Parties and Bankruptcy Court relied on various terms of the First Amendment for more than two years without any hesitation until the Bankruptcy Court raised this question *sua sponte* at oral argument in this matter.

*Fourth*, the Debtors do not and cannot contest the facts that the First Amendment was discussed on each day of the Sale Hearing, was provided to the UCC by the Debtors, was filed on the docket by the Debtors during the Sale Hearing, and was attempted to be entered into evidence by the UCC.  These facts show that the Bankruptcy Court's decision in this matter relied on the incorrect premise that the First Amendment was not submitted to the Court and Parties in interest. Transcript Regarding Hearing Held on 4/27/2021, Appendix for Appellant, Volume XVI, ECF No. 10-16 at A-7030.  The fact that there was no discussion of this $6 million issue during the three-day Sale Hearing to approve a $5.2 billion transaction

---

[3]    Moreover, the Debtors had been provided with balance sheets as of March 4, 2019 that the Foreign Subsidiaries held more than $6.5 million in cash and cash equivalents as of February 2, 2019.  Stopen Decl., Exs. A & B, Appendix for Appellant, Volume XVI, ECF No. 10-11 at A-5001-07.

does not "demonstrate that no one understood" Transform's interpretation of the APA, as the Debtors suggest.  Appellees' Br. at 42.  Rather, this silence shows that no Party objected to the plain contractual language of 2.13(a) (as the UCC did to the Credit Bid Release provisions), or at least that no one thought any such objection was sufficiently material to raise it at the Sale Hearing.  The Debtors cannot and do not point to any authority suggesting that a specific contractual provision must be explicitly discussed at a court hearing in order to become effective.

*Fifth*, the Debtors have no answer to Transform's arguments that the Amendment to APA Section 2.13(a) was immaterial in the context of this deal.  The Debtors do not challenge the fact that under the De Minimis Sale Order entered in this case, the Debtors could have disposed of a $6 million asset without approval from the Bankruptcy Court.  *See* Order Authorizing and Establishing Procedures for De Minimis Asset Sales and De Minimis Asset Abandonments, Appendix for Appellant, Volume I, ECF No. 10-1 at A-20-39.  The Debtors unconvincingly try to distinguish *Bayway Refining Co. v. Oxygenated Marketing & Trading A.G.*, 215 F.3d 219 (2d Cir. 2000), a Second Circuit case finding a change to a sales contract that amounted to 30% of the purchase price was not material, by arguing that the contract terms in that case were consistent with industry custom and the court there did not focus on a mathematical calculation of the impact of the transaction. Appellees' Br. at 44.  But neither of these points negates the fact that the Second

Circuit found that there was no material change in a case where the change amounted to 30% of the transaction, *Bayway*, 215 F.3d at 224, a number exponentially greater than the 0.12% change here.

## IV.   THE BANKRUPTCY COURT IMPROPERLY RELIED ON EVIDENCE OUTSIDE THE RECORD TO DENY TRANSFORM'S ACQUIESCENCE CLAIM

The Bankruptcy Court further erred by rejecting Transform's acquiescence argument on the basis of the Acevedo Declaration, which should not have been considered part of the record given the procedural history of this matter.  In their Response, the Debtors present two unconvincing counterarguments:   (i) the Bankruptcy Court properly considered the Acevedo Declaration; and (ii) Transform failed to establish the Debtors were inactive despite having "full knowledge of their rights and the material facts."  Appellees' Br. at 47-53.  Because the Debtors also rely on the substance of the Acevedo Declaration for the second argument, *see* Appellees' Br. at 48-49, both points turn on whether the Bankruptcy Court erred by relying on the Acevedo Declaration without holding an evidentiary hearing or allowing Transform to challenge Mr. Acevedo's testimony.

The law could not be clearer:  Under Local Rule 9014-2 of the United States Bankruptcy Court for the Southern District of New York, the first hearing scheduled in a contested matter is not an evidentiary hearing.  Bankr. S.D.N.Y. R. 9014-2 ("The first scheduled hearing in a contested matter will not be an evidentiary hearing at

which witnesses may testify.").  It is uncontested that the Bankruptcy Court relied on the Acevedo Declaration without admitting it into evidence, and that Mr. Acevedo was not made available for questioning by Transform at oral argument.

In their Response, the Debtors fail to acknowledge Local Rule 9014-2, let alone try to argue that it does not apply here.  Instead, in tacit recognition that the Court erred by admitting this Declaration, the Debtors lead by arguing that any such error was harmless.  Appellees' Br. at 52-53.  Yet the error here cannot be harmless because the Bankruptcy Court relied solely on the supposedly "uncontroverted" Acevedo Declaration to "show that the Debtor[s] did not have the critical fact of the dollar amount of cash in the Debtors' bank accounts . . . until well after the stock transfer."   Transcript Regarding Hearing Held on 4/27/2021, Appendix for Appellant, Volume XVI, ECF No. 10-16 at A-7031.  The Debtors point to no other support in the record for this conclusion other than the improperly-relied-upon Acevedo Declaration.

The Debtors also cite cases for the uncontroversial proposition that a Bankruptcy Court may "determine contested matters . . . on the pleadings and arguments of the parties, drawing necessary inferences from the record."  *See In re AMR Corp.*, 490 B.R. 470, 479 (S.D.N.Y. 2013) (quoting *In re Gonzalez–Ruiz*, 341 B.R. 371, 381 (1st Cir. BAP 2006)).  While a Bankruptcy Court need not "conduct an evidentiary hearing on a contested matter unless there are disputed issues of

material fact that a Bankruptcy Court cannot decide based on the record," *id.,* a Bankruptcy Court may not admit contested witness testimony without holding an evidentiary hearing based on the clear prohibition in Local Rule 9014-2.  Nor can a Bankruptcy Court deny a party the right to cross examine an adverse witness.

In any event, the Debtors' argument that they lacked "full knowledge of their rights" is not plausible.  Appellees' Br. at 48.  The Debtors complain that they were deprived of information by "Transform's soon-to-be Finance Department," which at the time was the Debtors' own Finance Department.  *Id.*  The Debtors are sophisticated parties represented by sophisticated counsel and financial advisors.  To the extent that the Debtors did not know the cash position of the Foreign Subsidiaries – a contested fact that was never resolved by means of an evidentiary hearing – they were best positioned to know this information by asking their own employees and restructuring advisors, who were on the ground at the Debtors' headquarters both prior to and throughout the bankruptcy proceeding, and certainly should have known this information as of the Closing Date.  This is not a situation where Transform gained unique knowledge after the Closing Date; the relevant fact is the amount of cash in the Foreign Subsidiaries' bank accounts on the Closing Date, which is a fact that was known (or that should have been known) to the Debtors <u>before</u> it became known to Transform.

The Debtors' final argument is that they were not "inactive" and that they acted reasonably by failing to raise this issue for more than two years. *Id.* at 50-51. The Debtors fail to address the strongest evidence of their inactivity and Transform's reasonable reliance on it – their transferring all of the equity interests of the Hong Kong Subsidiaries to Transform, including the interests in the cash sitting in those Subsidiaries' bank accounts. The Debtors cite no authority in support of the proposition that their inactivity for more than two years should be excused by their prioritizing other litigation against Transform, and if anything, one would have expected the Debtors to have raised their claim over these funds much earlier as part of those disputes. If this were a valid defense, any party could point to other actions they have taken in the interim to explain away their inactivity – that is not the law.

## CONCLUSION

Transform respectfully requests that the Order be reversed and remanded to the Bankruptcy Court to enter judgment for Transform.

Dated:      New York, New York
            October 18, 2021

                        CLEARY GOTTLIEB STEEN & HAMILTON
                        LLP

                        By:   */s/ Sean A. O'Neal*

                              Sean A. O'Neal
                              Andrew Weaver
                              Samuel Levander

                              One Liberty Plaza
                              New York, NY 10006
                              Telephone:  (212) 225-2000
                              Facsimile:  (212) 225-3999

                              *Attorneys for Transform Holdco LLC*

21

## CERTIFICATE OF COMPLIANCE

1.      This brief complies with the type-volume limitation of Federal Rule of Bankruptcy Procedure 8015(a)(7)(B)(ii), because it contains 4,908 words, excluding the parts of the brief exempted by Federal Rule of Bankruptcy Procedure 8015(g).

2.      This brief complies with the typeface requirements of Federal Rule of Bankruptcy Procedure 8015(a)(5) and the type style requirements of Federal Rule of Bankruptcy Procedure 8015(a)(6) because this brief has been prepared in a proportionately spaced typeface using Microsoft Word in 14-point Times New Roman font.

Dated:  New York, New York
         October 18, 2021

By: */s/ Samuel Levander*
Samuel Levander